UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **STEVEN BEYER** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| **ASCENSION HEALTH** ) | Case No. _____ |
| ) | |
| and ) | **JURY TRIAL DEMANDED** |
| ) | |
| **ASCENSION MICHIGAN,** ) | |
| ) | |
| and ) | |
| ) | |
| **ASCENSION PROVIDENCE** ) | |
| **HOSPITAL** ) | |
| ) | |
| and ) | |
| ) | |
| **REVERENCE HOME HEALTH &** ) | |
| **HOSPICE, LLC** ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT**

**PRELIMINARY STATEMENT**

1. Steven Beyer ("Plaintiff") brings this action under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504") and the Michigan Persons with Disabilities Civil Rights Act of 1976, Mich. Comp. Laws §§ 37.1101 *et seq.* ("MPDCRA") against Ascension Health and its subsidiaries: Ascension Michigan, Ascension Providence Hospital, Novi Campus, and Reverence Home

1

Health & Hospice, LLC ("Defendants") for failure to provide on-site American Sign Language ("ASL") interpreters to ensure effective communication with the deaf son and primary caretaker of a terminally ill patient.  Defendants own and operate numerous hospitals and hospice centers in Michigan as well as nationwide. Defendants refused to provide on-site interpreters despite a critical need to communicate with Mr. Beyer about his mother's illness and to educate and adequately train Mr. Beyer on the care and treatment he would be providing to his mother in hospice. Instead, Defendants sporadically provided unreliable and malfunctioning Video Remote Interpreting ("VRI") services at the hospital and provided no interpreting services either on-site or via remote means during hospice care. Because Defendants failed to provide the required effective communication, Defendants discriminated against the Plaintiff.  Plaintiff seeks compensatory damages to redress Defendants' failure to provide the necessary auxiliary aids or services to ensure effective communication as required by Section 504 and the MPDCRA, as well as reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the claim brought pursuant to 29 U.S.C. § 794 because "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C § 1331.

3. This Court has personal jurisdiction over the Defendants because Defendants do business in Michigan.

4. This Court has supplemental jurisdiction over the MPDCRA claim because the claim "is so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

5. Venue is proper in this district under 28 U.S.C. § 1391(b) because a "substantial part of the events or omissions giving rise to the claim occurred" in this judicial district.

## PARTIES

6. Steven Beyer is a deaf individual who resides in Wayne, Michigan.

7. Defendant Ascension Health is a corporation headquartered in St. Louis, Missouri which provides health care, and owns or operates Ascension Providence Hospital, Novi Campus, and Reverence Home Health & Hospice, LLC. Ascension Health's address is 101 South Hanley Road, Suite 450, St. Louis, MO 63105. Its resident agent is CSC-Lawyers Incorporation Service, 601 Abbot Road, East Lansing, MI 48823.

8. Defendant Ascension Michigan, a subsidiary of Ascension Health, operates Ascension Providence Hospital, Novi Campus, and Reverence Home

Health & Hospice, LLC. Ascension Michigan's resident agent is CSC-Lawyers Incorporation Service, 601 Abbot Road, East Lansing, MI 48823.

9. Defendant Ascension Providence Hospital operates a hospital located at 47601 Grand River Avenue, Novi, MI 48374. Its resident agent is CSC-Lawyers Incorporation Service, 601 Abbot Road, East Lansing, MI 48823.

10. Defendant Reverence Home Health and Hospice, LLC is a hospice services provider that operates Ascension Clinton Township Reverence Home Health and Hospice with the address of 37650 Garfield Road, Clinton Township, MI 48036. Its resident agent is C T Corporation System, 40600 Ann Arbor Rd E Ste 201, Plymouth, MI 48170.

11. Defendants are recipients of federal financial assistance because they accept, *inter alia*, payments from Medicaid and Medicare.

## STATEMENT OF FACTS

12. Plaintiff, Steven Beyer, is a deaf individual.

13. Mr. Beyer is substantially limited in the major life activities of hearing, speaking, and communicating.

14. Mr. Beyer struggles to understand people who use spoken language.

15. Mr. Beyer's primary means of communication is American Sign Language ("ASL"), a visual language with unique grammar and syntax which differs from English and other spoken languages.

16. For Mr. Beyer to discuss issues regarding medical care, qualified interpreters are necessary to ensure effective communication.

### Steven Beyer's Mother Is Hospitalized

17. On or about January 1, 2020, Mr. Beyer took his mother, Cynthia Beyer, to the emergency room of Ascension Providence Hospital in Novi, Michigan.

18. Cynthia Beyer was a hearing individual who had been struggling with failing health.

19. Upon arrival to Ascension Providence Hospital, Mr. Beyer requested on-site interpreters.

20. Instead, Defendants offered only Video Remote Interpreting ("VRI").

21. VRI is a service that uses video conferencing technology and equipment. Because it relies on video, audio, and internet technology, VRI can often have technical issues. With VRI, the interpreter appears via videoconference and is not physically present in the room with the individuals whose conversations the interpreter is supposed to interpret. The interpreter may not be able to see or hear all information which is being relayed and connectivity issues can cause buffering, pixilation, or lag. Because ASL is a visual three-dimensional language, this lack of visibility makes it difficult for both the interpreter to relay information and for the deaf person to understand what is being communicated.

22. When Defendants set up the VRI, it was blurry, frequently froze, and repeatedly disconnected. Mr. Beyer was unable to communicate through the VRI.

23. Mr. Beyer told Defendants that he could not understand the VRI and repeatedly requested on-site interpreters.

24. Defendants did not provide the on-site interpreter as requested, and over the next few days, Mr. Beyer was unable to communicate with his mother's health care providers during a critical time regarding her care, treatment options, and prognosis.

25. On or about January 6, 2020, a doctor informed Mr. Beyer that Cynthia Beyer's preliminary results indicated terminal cancer. The doctor conveyed this information through VRI which was blurry and frequently froze. In addition, the interpreter was unable to hear the doctor. Mr. Beyer had to constantly interrupt the doctor to show them that the VRI was not working, that Mr. Beyer could not understand the interpreter, and that the interpreter could not understand Mr. Beyer. When the doctor took Mr. Beyer to a different location to show and discuss a scan, the VRI equipment could not follow them because it could not be unplugged. As a result, Mr. Beyer was unable to communicate with the doctor about the scan.

26. Without an on-site interpreter, Mr. Beyer was forced to rely on his hearing sister, Alicia Beyer, and his terminally ill mother for communication.

Alicia and Cynthia Beyer would attempt to relay the medical information to him. However, neither Alicia nor Cynthia are fluent in ASL, nor are they trained professional ASL interpreters. Their attention was constantly split between translating the information for Mr. Beyer and attempting to understand the lengthy medical discussions themselves. At the same time, all three individuals experiencing the emotional strain of Cynthia's prognosis made worse by their struggle to communicate.

27. Given the communication difficulties with VRI, Mr. Beyer again requested that an on-site interpreter be provided. The doctor indicated that there would be an on-site interpreter the following day.

28. On or about January 7, 2020, members of Cynthia's medical team set up the VRI equipment instead of the on-site interpreters that were necessary for Mr. Beyer to participate. Mr. Beyer became upset and asked why the on-site interpreter that had been promised was not being provided. The medical team explained that they do not provide on-site interpreting services.

29. On that same day, a social worker and hospice manager met with Mr. Beyer and Alicia Beyer to discuss hospice arrangements. The social worker and hospice manager claimed they "would try" to provide an on-site interpreter for all hospice visits so that Mr. Beyer could be trained in providing care for his mother.

7

30. Despite repeated requests and an obvious need, Defendants never provided on-site interpreters to ensure effective communication with Mr. Beyer during Cynthia Beyer's hospitalization.

31. In refusing to provide qualified interpreters to communicate effectively with Mr. Beyer at one of the most painful moments in his family life, the Defendants acted with intent and caused significant emotional harm.

**Steven Beyer's Mother Is Discharged into Home Hospice Care**

32. On or about January 9, 2020, Cynthia Beyer was discharged into home hospice care at Mr. Beyer's home.

33. Mr. Beyer was the primary caretaker for his mother while she was in home hospice care.

34. Hospice workers visited Mr. Beyer's home on a daily basis.

35. During home hospice visits, hospice staff serve several functions, including providing care for the hospice patient, teaching the caregiver how to provide appropriate care for a hospice patient, and providing support services and counseling for the caregiver in preparation for the hospice patient's expected passing.

36. For instance, Cynthia Beyer's home hospice records stated that goals included educating the caregiver how to perform caregiving tasks, demonstrate safe use of equipment, understand safe administration of medicine, and how to

understand changes in the hospice patient's condition as the patient progressed towards death.

37. Cynthia Beyer's home hospice records also stated as goals "caregivers will understand bereavement services," ensuring that the caregiver took care of himself or herself while taking care of the hospice patient, and meeting the spiritual needs of the caregiver.

38. Given the importance of communication to ensure that he could participate in the decision-making process regarding his mother's care, learn how to care for his mother, know what to expect, and receive counseling support, Mr. Beyer repeatedly requested on-site interpreters for the home hospice visits.

39. Defendants never provided interpreters for the home hospice visits even though they knew he was deaf and had requested qualified interpreters.

40. The hospice staff would often only communicate with Alicia Beyer, excluding Mr. Beyer from the conversation even though Mr. Beyer was the primary caretaker.

41. Mr. Beyer was unable to understand the information being relayed to Alicia Beyer.

42. Hospice staff gave Cynthia Beyer medicine without explaining to Mr. Beyer what the medication was.

9

43. For instance, hospice staff began giving morphine to Cynthia Beyer. Without an interpreter, hospice workers could not communicate with Mr. Beyer about the morphine. Hospice workers failed to explain to Mr. Beyer the consequences of the morphine injections. As a result, Mr. Beyer was not able to make an informed decision about the morphine injections on behalf of his mother.

44. Due to the lack of qualified interpreters, Mr. Beyer was not able to understand instructions on how to better care for his mother while she was in hospice care.

45. Due to the lack of qualified interpreters, hospice staff was not able to provide support services or counseling to help Mr. Beyer prepare for the expected passing of his mother.

46. On or about January 12, 2020, Cynthia Beyer passed away.

47. Defendants never provided qualified interpreters for the home hospice care.

48. As a result of Defendants' failure to provide qualified interpreters, Mr. Beyer suffered significant emotional distress, humiliation, frustration, and embarrassment at not being able to participate fully in his mother's care and receive the support he needed to deal with the expected loss of his mother.

## COUNT I
## SECTION 504 OF THE REHABILITATION ACT OF 1973

49. Plaintiff, Steven Beyer repeats and re-alleges the foregoing paragraphs in support of this claim.

50. Plaintiff is substantially limited in the major life activities of hearing, speaking, and communicating, and therefore an individual with a disability under section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

51. Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

52. During all relevant times, Defendants were recipients of federal financial assistance subject to section 504.

53. Defendants discriminated against Plaintiff on the basis of his disability by denying the Plaintiff auxiliary aids and services necessary to ensure effective communication between the Plaintiff and Defendants.

54. As a result of Defendants' failure to provide qualified interpreter services, Defendants did not communicate effectively with Plaintiff regarding his mother's medical care, did not communicate effectively with him to instruct him on how to provide home hospice care for his mother as her primary caregiver, and

11

did not communicate effectively with him to provide him with the support services and counseling services that they provide for caregivers.

55. Defendants intentionally discriminated against Plaintiff solely on the basis of his disability, in violation of section 504.

56. Plaintiff suffered damages as a result of Defendants' conduct.

## COUNT II
## MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT

57. Plaintiff, Steven Beyer repeats and re-alleges the foregoing paragraphs in support of this claim.

58. The purpose of the Michigan Persons with Disabilities Civil Rights Act states that "The opportunity to obtain . . . [the] full and equal utilization of public accommodations . . . without discrimination because of disability is guaranteed by this act and is a civil right."  Mich. Comp. Laws § 37.1102.

59. Mr. Beyer is substantially limited in the major life activities of hearing, speaking, and communicating. Accordingly, he is an individual with a disability as defined in Mich. Comp. Laws § 37.1103(d).

60. The Defendants are public accommodations as defined by Mich. Comp. Laws § 37.1301 because they are health facilities that extend, offer, sell, or otherwise make available their services, facilities, privileges, advantages, and accommodations to members of the public.

61. Defendants discriminated against Plaintiff in violation of Mich. Comp. Laws § 37.1302 by failing to provide qualified interpreters and not providing Mr. Beyer with the same opportunity as similarly situated hearing caregivers to participate in the decision-making process regarding his mother's care, or receive the educational and counseling services that Defendants offers such caregivers.

62. As a result of Defendants' failure to provide qualified interpreter services, Defendants did not communicate effectively with Plaintiff regarding his mother's medical care, did not communicate effectively with him to instruct him on how to provide home care for his mother as her primary caregiver, and did not communicate effectively with him to provide him with the support services and counseling services that they provide for caregivers.

63. Defendants' failure to provide appropriate auxiliary aids and services for individuals with hearing disabilities denied Mr. Beyer, solely on the basis of his disability, access to the utilization and benefits of the place of public accommodation.

64. Defendants' conduct was intentional discrimination.

65. Plaintiff suffered damages as a result of Defendants' conduct.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter an Order:

a. Issuing a declaratory judgment that Defendants' policies, procedures, and practices subjected Plaintiff to discrimination in violation of Section 504 of the Rehabilitation Act of 1973 and the Michigan Persons with Disabilities Civil Rights Act;

b. Awarding compensatory damages;

c. Awarding reasonable costs and attorneys' fees; and

d. Awarding any and all other relief that may be necessary and appropriate.

## JURY DEMAND

Plaintiff hereby demands that this action be tried before a jury.

This the 2nd day of November, 2020.

Respectfully submitted,

_/s/ Angie Martell_____
Angie I. Martell
Iglesia Martell Law Firm, PLLC
117 North First Street, Suite 111
Ann Arbor, MI 48104
angie@iglesiamartell.com
Tel: 734.369.2331